IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATRICK THOMPSON, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN ADVISORS GROUP (INC.),<br><br>    Defendant. | CIVIL ACTION NO.<br>1:14-cv-03966-LMM |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT**

Name Plaintiff Patrick Thompson and all 20 party plaintiffs who opted into this case (collectively, "Plaintiffs") move, pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982), that the Court: (i) Approve the parties' settlement of Plaintiffs' overtime claims under the Fair Labor Standards Act ("FLSA") [Doc. 46-1: Ex. 1 - List of Payments to the Plaintiffs]; (ii) Approve the issuance of the Notice of Settlement ("proposed Notice") to all Plaintiffs [Doc. 46-2: Ex. 2 - Notice]; (iii) Approve a service award of $2,500 to name Plaintiff Patrick Thompson; (iv) Approve the amount of attorney's fees and costs Defendant has agreed to pay Plaintiffs' counsel, which was negotiated after settling Plaintiffs' claims; and (v) sign the parties' proposed Agreed Order approving the terms of the settlement, as

- 1 -

specified by agreement in the proposed order [Doc. 46-6: Ex. 6 - Agreed Order].

In accordance with the requirement that all FLSA compromises be fair and reasonable, the Court is requested to retain jurisdiction over the parties' settlement, the Defendant's compliance with making the settlement payments, and the parties' compliance with the settlement terms, as specified in the order. The proposed Agreed Order reflects this request of continuing jurisdiction. [Doc. 46-6: Ex. 6 at 4.]

The parties' settlement is the product of extensive investigation, the exchange of substantial amounts of data and analyses of the data, and exhaustive and lengthy arm's length negotiations. The individual settlement payments to Plaintiffs total $18,827.58—which includes unpaid back overtime and an equal amount in liquidated damages [Doc. 46-1: Ex. 1 at 2]. Name Plaintiff Patrick Thompson will also receive a service payment of $2,500.00 for services rendered to the class. [*Id*.] Also, Plaintiffs' counsel will be paid attorney's fees and costs totaling $40,000.00 by Defendant—which fees and costs were negotiated *separately from* and *after* the parties had already agreed on Plaintiffs' settlement payments and name Plaintiff's service payment. [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶¶ 6, 8.]

The parties' settlement fully satisfies the criteria for approval of an FLSA collective action settlement. The settlement resolves a bona-fide

dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations by counsel well-versed in wage-and-hour law.

Plaintiffs' motion relies on (i) the record in this action, (ii) the factual recitation below, (iii) the Settlement Payments to Plaintiffs [Doc. 46-1: Ex. 1], (iv) the proposed Notice to accompany the settlement checks to the opt-in plaintiffs, which explains that an opt-in plaintiff's acceptance of their settlement checks will result in the full and complete release of all FLSA claims against Defendant [Doc. 46-2: Ex. 2], and (v) the parties' Stipulations as to certain material facts and attorney declarations [Doc. 46-5: Ex. 5 - Stipulations; Doc. 46-3, 46-4: Exs. 3, 4 - decl. of pls' counsel].

## *FACTUAL BACKGROUND*

This collective action was filed on December 13, 2014, alleging that Defendant violated the FLSA by not paying the proper overtime compensation in violation of 29 U.S.C. § 207. [Doc. 1: Complaint.] The name Plaintiff alleged that he had been employed by Defendant as a loan officer and, along with other similarly situated employees, alleged two FLSA damages theories: (1) failure to include bonus and commission payments in the overtime calculation; and (2) uncompensated off-the-clock work. [*Id.* ¶¶ 33-43.] Defendant timely answered, denying the commission of any FLSA violations. [Doc. 14.]

On April 13, 2015, the Court granted the parties' Joint Motion to Stay Discovery, Grant Conditional Collective-Action Certification, and Order Notice to the Class. [Doc. 24.] Following notice to the class, 20 individuals filed written consents to opt into this action as party plaintiffs.[1] [Docs. 1 (ex. 1), 3, 27-38.]

After the opt-in period closed, the parties commenced settlement discussions, which included Defendant's voluntary provision of numerous documents relating to the damages calculation for Plaintiffs.

On July 28, 2016, the parties concluded their arm's-length negotiations and settled Plaintiffs' underlying FLSA claims and only then agreed to begin negotiating Plaintiffs' attorney's fees and costs. The parties agreed to a total settlement amount of $21,327.58 for Plaintiffs' underlying FLSA claims, including a service payment to name Plaintiff Patrick Thompson of $2,500.00 for services he rendered to the class. Subsequently, on August 11, 2016, the Parties reached a settlement of Plaintiffs' claim for attorney's fees and costs in the amount of $40,000.00. [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶¶ 5, 7.]

Through their respective counsel, the parties are familiar with the underlying facts and the legal issues raised by the pleadings. The parties have engaged in arm's-length settlement negotiations since soon after the

---

[1] Susan Kim also opted-in to the lawsuit but was deemed ineligible because she had worked in Defendant's California location, which is not part of the class definition for this action. [Docs. 26-1 at 2, 30.]

opt-in period closed.  The settlement payments are a product of the parties' exhaustive negotiations here and represent a reasonable compromise of the disputed issues in this case.

In addition, the parties entered into this settlement because they believe it reflects a reasonable compromise of the disputed claims and issues here.  Plaintiffs submit that the settlement amounts are fair, reasonable, and in the best interest of both Plaintiffs and Defendant.  Plaintiffs further submit that the certainty of settlement is better than the uncertain outcome of protracted litigation.  Finally, all Plaintiffs personally find the settlements to be fair and reasonable after being advised by Plaintiffs' counsel as to the range of possible outcomes in this action and the substantial risks associated with proceeding to trial.

## *LEGAL ARGUMENT*

### 1. <u>The Settlement is Fair and Reasonable</u>

#### *1.A. <u>The Payments to Plaintiffs Satisfy Lynn's Food</u>*

In *Lynn's Food*, the Eleventh Circuit explained that claims under the FLSA may be settled or compromised only if the Department of Labor supervises the payment of back wages or if the district court enters a stipulated judgment, but only "after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353.  Similarly, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is

compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller,* 307 F. App'x. 349, 351 (11th Cir. 2009) (*per curiam*).

Here, the parties' settlement represents a fair and reasonable compromise of Plaintiffs' overtime claims.  The settlement payments are composed of unpaid back overtime *plus* liquidated damages.  Plaintiffs allege that Defendant failed to compensate them properly under the FLSA for all their work in excess of 40 hours per week.  The reason, as alleged by Plaintiffs, is their bonus payments were not included in their overtime calculation and they worked off the clock.  [Doc. 1 ¶ 43(a-b).

Defendant asserts that for a period of time it inadvertently failed to include commission and bonus payments in its regular rate of pay calculations.  Defendant further asserts that it discovered this omission prior to the time that this lawsuit was filed, and at that time issued checks to Plaintiffs and its other current and former employees for the previously unpaid overtime.  As part of this settlement, Defendant has agreed to pay Plaintiffs liquidated damages relating to the regular-rate-of-pay claim.

Defendant denied Plaintiffs' allegations of FLSA violations relating to off-the-clock work.  [Doc. 1 ¶ 43(c-d).  However, in an effort to resolve all of Plaintiffs' FLSA claims, the parties engaged in arms-length settlement

negotiations and were able to reach an agreement on settlement amounts to cover Plaintiffs' off-the-clock claims, including liquidated damages.

Each side faced significant litigation risk in this action. The settlement thus accounted for a range of possible outcomes that could be impacted by disputed fundamental facts, including the amount of time Plaintiffs engaged in compensable activities while working off-the-clock, and Defendant's good-faith in failing to pay Plaintiffs the appropriate regular rate of pay.

Also, none of the Plaintiffs had contemporaneously created records documenting all the total number of unpaid hours allegedly worked in excess of 40 per week. Conversely, Defendant had paid the Plaintiffs overtime compensation when their time records reflected hours worked in excess of 40 per week—a fact that arguably undermined both Plaintiffs' claims on the merits and Plaintiffs' allegation that the Defendant acted willfully.

Consequently, on their off-the-clock claims, Plaintiffs' arguments boiled down to their own statements potentially supported in part by various time and pay records and other documents versus Defendant's practice of paying overtime. At bottom, witness credibility was critical.

The evidence—while likely sufficient to preclude summary judgment—nevertheless presented significant risks at trial to **both** sides on the issues of liability, Defendant's good faith, and damages. On the one hand, Plaintiffs faced the prospect of failing to convince a jury to award damages for three

- 7 -

years, let alone the amount of the proposed settlements. *See Wingrove v. D.A. Techs., Inc.*, No. 1:10-cv-3227-HLM, 2011 WL 7324219, at *2 (N.D. Ga. Feb. 14, 2011) (evaluating the parties' relative litigation risks in approving their FLSA settlement); *Shelton v. Family Dollar Stores of Indiana, LP*, No. 105-cv-756, 2007 WL 1597650, at *9 n. 9 (S.D. Ind. June 1, 2007) (noting that, while summary judgment was not merited, an overtime case based almost entirely on a plaintiff's own testimony is not a strong one).

On the other hand, Defendant's risk was that a jury would reject its good-faith defense as well as credit Plaintiffs' testimony on the off-the-clock claims in full or part. *Wingrove*, 2011 WL 7324219, at *2. As a result, a jury may award all or a portion of the overtime wages claimed by Plaintiffs in an amount exceeding the proposed settlement. *Id.*

Each side thus faced substantial continuing litigation expenses that, given these risks arising from the competing factual narratives, offered no guarantee of success at the case's conclusion. *See Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1527, 1531 & n. 6 (11th Cir. 1994) (listing considerations used to approve a settlement). Moreover, extending the litigation of the case for several more months—and even longer with possible appeals—would impose a substantial additional hardship in delaying payment to Plaintiffs. *Id.* Therefore, Plaintiffs and Defendant all favored the settlement and avoidance

of an extension of the action. *See id.* Also, counsels' respective views favored the proposed settlements in light of the risks central to any trial. *Id*.

Equally important, there has been *no collusion or fraud* here. The settlement was reached through exhaustive and lengthy *arm's length* negotiation between counsel.

Finally, all Plaintiffs find their settlements to be fair and reasonable. *See id*. Class counsel individually advised them of the range of possible outcomes in this action and the substantial risks associated with proceeding all the way to trial. All Plaintiffs were also informed by class counsel as to (i) the proposed individual payments, (ii) that Defendant would pay class counsel's attorney's fees and costs separately from Plaintiffs' recovery, and (iii) Plaintiffs had no obligation to pay any attorney's fees or costs.

In sum, given the foregoing circumstances, the proposed settlement represents a fair and reasonable resolution of Plaintiffs' individual claims. *See Dail v. George A. Arab, Inc.*, 391 F. Supp.2d 1142, 1146 (M.D. Fla. 2005) (noting the "strong presumption" in favor of finding a settlement fair under the FLSA). The Court is therefore urged to approve the parties' settlement.

### 1.B. *The Proposed Notice Should be Approved*

The Court should also approve the agreed proposed Notice of Settlement. [Doc. 46-2: Ex. 2.] The proposed Notice accurately informs eligible settlement class members of the terms of the settlement, the amount

to which they agreed, and the scope of the release.  *See Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement").

### 1.C.  The Service Award to Plaintiff Patrick Thompson is Reasonable

The parties have also agreed that, with Court approval, name Plaintiff Patrick Thompson will receive a $2,500 service award in recognition of assistance he rendered to class counsel in obtaining the benefits of the settlement for the collective group.  The service award to Plaintiff Thompson was negotiated and agreed upon separately and without regard to the total amounts Defendant agreed to pay Plaintiffs.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (collecting cases); *see, e.g., Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013) ("[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone."); *In re Packaged Ice*

*Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class").

Incentive "awards are particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Such awards are within the discretion of the court. *Id.*; *see Dallas*, 2013 WL 2197624, at *10-11; *Date*, 2013 WL 3945981, at *13.

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013). Here, Plaintiff satisfies all three factors.

Plaintiff Thompson took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to the collective action members. Plaintiff Thompson participated in a substantial pre-suit investigation and provided primary-source information crucial to establishing Plaintiffs' claims. *See Frank*, 228

F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).

In addition, Plaintiff Thompson assumed substantial direct and indirect risks. He agreed to bring the action in his name, which included the possibility of being deposed and testifying if there was a trial. In so doing, Plaintiff Thompson assumed the risk of retaliation and blacklisting. *Frank*, 228 F.R.D. at 187 (Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers")*; see also Bozak*, 2014 WL 3778211, at *5 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

Even where no actual retaliation occurs, as appears to be the case here, class representatives merit recognition for assuming the *risk* of retaliation for the sake of absent class members. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs

litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone*, 2011 WL 5148650, at *7 ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

Although Plaintiff Thompson was no longer employed by Defendant when he initiated this lawsuit, he risked retaliation from his current employer and put his ability to secure future employment at risk. *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees [] fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, at *1.

Finally, the amount of the requested service award is reasonable and consistent with awards that have been granted in employment class and collective actions. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving "modest" class

representative award of $10,000 to each of the two class representatives in FLSA action); *Bert*, 2008 WL 4693747, at *1, *3 (finding service award of $10,000 to five class representatives was "rather modest" and "fair and reasonable" in employment discrimination case). In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here.[2]

### 1.D. The Amount of Attorney's Fees and Costs is Fair and Reasonable

The amount to be paid to Plaintiffs' counsel in attorney's fees and costs—$40,000.00—was negotiated only *after* the parties had settled the amount payable to Plaintiffs. [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶¶ 6, 8.] And Plaintiffs' attorney's fees payment was negotiated and agreed upon *separately* and *without regard to* the total amount Defendant agreed to pay Plaintiffs. [*Id.*] By doing so, any potential conflict of interest between Plaintiffs and counsel was avoided. *See Bonetti v. Embarq Mgmt. Co.*, 715 F.

---

[2] *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell*, 2012 WL 1320124, *14-15 (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, *9 (E.D.N.Y. Jan. 20, 2010) (approving $15,000 and $10,000 to named plaintiffs).

Supp.2d 1222, 1228 (M.D. Fla. 2009) ("[T]he best way to insure that no conflict has tainted the settlement [of an FLSA claim] is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.").

Here, because Plaintiff counsel's efforts, 21 individuals will receive compensation under the FLSA totaling more than $21,000. The attorney's fees amount thus bears a 1.82-to-1.00 ratio to Plaintiffs' recovery—which is well within the acceptable range for the ratio of attorney's fees-to recovery approved by the Eleventh Circuit, by other judges in this district, and by other district courts.[3]

The attorney's fees and costs figure also includes out-of-pocket expenses of $1,183.11. These expenses were incurred by Plaintiffs' counsel in filing and serving the complaint, and paying an administrator for sending out the collective action notice to the class; plus attorney's fees in the amount of $38,816.89. [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶ 6.]

Specifically, as of August 11, 2016 (the settlement date), plaintiffs' counsel (i) had expended 87.1 hours in litigating Plaintiffs' claims, and (ii) estimated that at least an additional 10 hours would be spent in relation to

---

[3] *E.g., McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1185 (11th Cir. 1993) (12:1 ratio of attorney's fees to recovery approved in Title VII case); *Ekeberg v. Shook-Brown*, No. 2:08-cv-0195-RWS, 2010 WL 1540129 (N.D. Ga. April 15, 2010) (approving a 3.6:1 ratio of a fees to recovery); *Norman v. Alorica, Inc.*, No. 11-cv-0433, 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012) (11.5:1 ratio for fees to recovery).

finalizing the motion to approve settlement and effecting delivery of the settlement checks to Plaintiffs. That totals, on a lodestar basis, $46,122.50 (Alan H. Garber: 86.4 hours @ $475/hr.; Marc Garber: 10.7 hours @ $475/hr.). [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶ 6.]

Counsel's total hours expended include: (i) meetings and conferences with Plaintiffs about the facts; (ii) preparing and filing this action; (iii) preparation of the parties' Joint Preliminary Report and Discovery Plan; (iv) preparation of parties' Joint Motion for Conditional Certification; (v) preparation of discovery requests to Defendant; (vi) communications with Defendant regarding its settlement offers; (vii) communications with Plaintiffs regarding Defendant's settlement offers; (viii) review and analysis of Defendant's data and damages analyses; (ix) negotiations with Defendant's counsel regarding settlement and damages calculations; (x) review of the parties' joint filings; (xi) negotiations of the proposed Notice of Settlement; (xii) preparation of plaintiff counsels' declarations; and (xiii) preparation of this Unopposed Motion to Approve. [*Id.*]

An hourly rate of $475 for Alan H. Garber, Plaintiffs' lead counsel, is a reasonable rate in FLSA cases for attorneys with his experience.[4] [*Id.* ¶¶ 3-

---

[4] Plaintiffs' lead counsel, Alan Garber, has 21 years' experience litigating FLSA, Title VII, and civil rights cases. He graduated Rutgers Law School-Newark in 1994, where he was a member of the *Rutgers Law Review.* After clerking for the Honorable Sharon Lovelace Blackburn, U.S. District Court-N.D. Ala., Garber spent

5.] An hourly rate of $475 for Marc Garber, Plaintiffs' co-counsel, is a reasonable rate in FLSA cases for attorneys with his extensive and lengthy experience (and also below his usual hourly rate).[5] [Doc. 46-4: Ex. 4 - Decl. Marc Garber ¶¶ 3-8.]

Moreover, Plaintiffs' counsel's rates are comparable to other rates approved in this jurisdiction in FLSA cases during the past several years

---

six years with the Birmingham law firm of Gordon Silverman Wiggins & Childs and the Atlanta law firm of Sutherland, Asbill and Brennan, before starting The Garber Law Firm. Garber has litigated more than 100 collective-action, class-action, and individual claims in the Northern District of Georgia and other federal districts. Counsel's collective and class actions include: *Beavers v. American Cast Iron Pipe Co.*, CV-86-N-1982 (N.D. Ala.); *Moore v. Norfolk S. Corp.*, 2:93-CV-00133-UWC (N.D. Ala.); *Daniels v. Fontaine Fifth Wheel*, 2:94-cv-2158-HDB (N.D. Ga.); *Armstrong v. Powell*, No. CIV-03-0255C (W.D. Okla.); *Allen v. SunTrust Bank*, 1:06-cv-3075-RWS (N.D. Ga.); *Coleman v. Buffalo Rock Co.,* 2:07-cv-915-VEH (N.D. Ala.); *Layton v. DHL Express (USA) Inc.*, 2:08-cv-1542-WMA (N.D. Ala.); *Likes v. DHL Express (USA) Inc.,* 2:08-cv-428-HGD (N.D. Ala.); *Riddle v. SunTrust Bank*, 1:08-cv-1411-RWS (N.D. Ga.); *Tate v. DHL Express (USA) Inc.*, 2:08-cv-1935-VEH (N.D. Ala.); *Reece v. United Home Care of North Atlanta*, 1:12-cv-2070-RWS (N.D. Ga.); *Page v. The Hertz Corp.*, 1:12-cv-01965-WSD (N.D. Ga.); *Walker v. Vital Recovery Serv., Inc.*, 1:13-cv-534-AT (N.D. Ga.).

[5] Marc Garber is a 1985 *cum laude* graduate of the State University of New York at Buffalo Law School, after which he clerked for U.S. District Judge Jerry Buchmeyer in the Northern District of Texas. His customary hourly rate is $550 per hour. He has been conducting complex criminal and civil litigation in federal court for nearly 30 years—including nine years as an Assistant United States Attorney specializing in financial fraud and health-care fraud prosecutions involving losses up to $140 million dollars, plus seven years with Gibson Dunn & Crutcher and Alston & Bird, in addition to his time at the Garber Law Firm, P.C. His practice combines complex white-collar criminal defense work with civil labor and employment cases. He has tried more than a dozen complex criminal fraud trials; and he has litigated federal employment and wage and hour cases, including class action and collective action cases, in this Court and other courts in the Southeast. He has also has argued more than 30 appeals in the 2d, 3d, 5th, 6th, 10th, and 11th Circuits; and filed eight *certiorari* petitions with the U.S. Supreme Court, including one that was granted and resulted in a summary reversal.

(particularly when viewed in real-dollar terms). *E.g., Cain v. Almeco USA, Inc.*, 1:12-CV-03296-TWT, Docs. 84, 72-9 (N.D. Ga. May 23, 2014) (approving hourly rate of $450 for Atlanta-based attorney with 15 years of litigation experience); *Zimmerman v. SunTrust Bank*, 1:09-CV-2116-RWS, 2011 WL 6778541, *2 (N.D. Ga. 2011) (approving an hourly rate of $450 for Marc Garber); *Caone v. Aetna Life Ins. Co.*, 1:06-CV-3014-MNS, 2010 WL 6029242, at *8 (N.D. Ga. Dec. 22, 2010) (approving hourly rate of $425 for Atlanta-based attorney who graduated law school in 1994).

Plaintiffs' lodestar attorney's fees equaled approximately $46,122.50, and when combined with Plaintiffs' costs of $1,183.11, Plaintiff's attorney's fees and expenses totaled $47,305.61. [Doc. 46-3: Ex. 3 - Decl. Alan H. Garber ¶ 6.] But, after negotiations with Defendant, Plaintiffs agreed to the lesser amount of $40,000.00 in order to avoid further litigation on the attorney's fees and costs issue. [*Id.*]

### 2. **Issuance of the Settlement Payments**

The parties have agreed that Defendant shall tender Plaintiff's settlement payments, Plaintiff Thompson's service payment, and Plaintiffs' counsel's payment for fees and expenses within 10 business days of entry of this Court's order approving the parties' FLSA settlement. Such payments shall be sent to The Garber Law Firm, P.C. for distribution.

## CONCLUSION

In sum, the foregoing facts and information prove that the parties' proposed settlement represents a fair and reasonable resolution of Plaintiffs' individual claims under *Lynn's Food*. The Court is urged to approve the parties' settlement. Upon approval, the Court is requested to enter the parties' proposed Agreed Order (i) approving the settlements and dismissing this case against Defendant with prejudice, (ii) with this Court retaining jurisdiction over Defendant's compliance with making the settlement payments, the parties' compliance with the settlement terms, as specified in the proposed Agreed Order, and the parties' compliance with the terms of the Agreed Order.

Respectfully submitted,

**/s/ *Marc N. Garber***
ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta GA 30068-5648
Tel: (678) 560-6685
Fax: (678) 560-5067

***Attorneys for the Plaintiffs***

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 11, 2016, this motion was filed with the Clerk using the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

*/s/ Marc N. Garber*
MARC N. GARBER